# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

TIMOTHY M. RAGEN,

    Defendant.

4:23-CV-306

## ORDER

Before the Court is the United States' motion for summary judgment. Dkt. No. 25. Defendant Timothy M. Ragen has not responded. For the reasons set forth below, the Court **GRANTS** the United States' motion for summary judgment.

## BACKGROUND

This is a tax liability case brought by the United States to reduce to judgment unpaid federal income tax liability assessments against Defendant Timothy M. Ragen for the seven tax years of 2004, 2006, 2007, 2010, 2011, 2012, and 2013. Dkt. No. 1. "The Federal tax system is basically one of self-assessment, whereby each taxpayer computes the tax due and then files the appropriate form of return along with the requisite payment." United States v. Galletti, 541 U.S. 114, 122 (2004) (citing 26 C.F.R. § 601.103(a) (2003)). In this case, the United States alleges that Defendant

completed the first step by filing his federal income tax return each year, but continuously failed to pay his taxes. Dkt. No. 25-1 ¶¶ 8-13.

## I.    Defendant's Tax History

On the dates and in the amounts set forth below, the Internal Revenue Service ("IRS") made assessments against Defendant for federal income tax liabilities, penalties, and interest for the 2004, 2006, 2007, 2010, 2011, 2012, and 2013 tax years:

| Year | Assessment Date | Amount | Type of Assessment |
|------|-----------------|--------|--------------------|
| 2004 | November 28, 2005 | $67,469.00 | Tax |
| | | $2,579.00 | Interest |
| | | $1,919.00 | Penalty for Failure to Prepay |
| | | $2,598.76 | Penalty for Late Payment |
| | May 14, 2007 | $5,737.00 | Tax |
| | November 2, 2015 | $45,056.47 | Interest |
| | | $15,077.74 | Penalty for Late Payment |
| | October 31, 2016 | $5,012.89 | Interest |
| 2006 | November 19, 2007 | $119,559.00 | Tax |
| | | $5,030.76 | Interest |
| | | $5,490.00 | Penalty for Failure to Prepay |
| | | $4,144.93 | Penalty for Late Payment |
| | November 2, 2015 | $34,888.82 | Interest |
| | | $17,739.78 | Penalty for Late Payment |
| | October 31, 2016 | $5,566.10 | Interest |
| 2007 | October 20, 2008 | $193,530.00 | Tax |
| | | $5,326.24 | Interest |
| | | $6,475.69 | Penalty for Failure to Prepay |
| | | $3,710.60 | Penalty for Late Payment |
| | November 2, 2015 | $55,667.42 | Interest |

| | | | |
|---|---|---|---|
| | | $42,671.90 | Penalty for Late Payment |
| | October 31, 2016 | $10,880.19 | Interest |
| 2010 | November 21, 2011 | $177,866.00 | Tax |
| | | $4,080.77 | Interest |
| | | $3,815.00 | Penalty for Failure to Prepay |
| | | $7,114.64 | Penalty for Late Payment |
| | November 2, 2015 | $23,961.79 | Interest |
| | | $37,011.86 | Penalty for Late Payment |
| | October 31, 2016 | $9,102.05 | Interest |
| 2011 | October 15, 2012 | $55,235.00 | Tax |
| | | $381.55 | Interest |
| | | $831.11 | Penalty for Failure to Prepay |
| | | $755.87 | Penalty for Late Payment |
| | March 2, 2015 | $14,867.00 | Tax |
| | | $1,555.98 | Interest |
| | | $2,973.40 | Accuracy Penalty Pursuant to 26 U.S.C. § 6662 |
| 2012 | November 18, 2013 | $54,081.00 | Tax |
| | | $817.48 | Interest |
| | | $970.00 | Penalty for Failure to Prepay |
| | | $1,803.23 | Penalty for Late Payment |
| | June 9, 2014 | $544.89 | Interest |
| | | $1,379.04 | Penalty for Late Payment |
| | November 2, 2015 | $1,226.88 | Interest |
| | | $3,692.96 | Penalty for Late Payment |
| | October 31, 2016 | $1,218.35 | Interest |
| 2013 | November 24, 2014 | $115,620.00 | Tax |
| | | $1,574.54 | Interest |
| | | $1,177.00 | Penalty for Failure to Prepay |
| | | $3,429.80 | Penalty for Late Payment |
| | October 31, 2016 | $5,264.49 | Interest |
| | | $15,460.20 | Penalty for Late Payment |

Dkt. No. 25-1 ¶¶ 6, 14. The Treasury Department provided Defendant notice of these liabilities and made demands for payment. Id. ¶¶ 7, 15. Despite notice and demands for payment, Defendant failed to pay the balance due on the taxes, interest, penalties, and other statutory additions assessed against him. Id.

Beyond the tax liability listed above, the IRS used the Integrated Data Retrieval System ("IDRS") to calculate statutory interest at a quarterly rate, compounded daily. Dkt. No. 25-2 ¶¶ 8, 11. As of June 17, 2024, Defendant owed the United States $1,286,984.64 in income taxes, interest, penalties, and other additions for tax years 2006, 2007, 2010, 2011, 2012, and 2013, plus an additional balance of $11,403.51 from 2004[1] for which "the IRS was not able to provide an updated computation." Dkt. No. 25 at 15, 25-2 ¶ 7. Defendant also owes future statutory additions and interest that accrue until payment is made in full. Dkt. No. 25 at 15. Defendant admits that he remains liable for unpaid taxes but is financially unable to pay. Dkt. No. 14 ¶¶ 9-10, 16.[2]

## II.  Tolling Events

---

[1] Acknowledging that the taxes assessed in 2005 are time-barred, the United States seeks only the amount assessed on May 14, 2007, and the penalties and interest on that assessment for tax year 2004. Dkt. No. 25-1 at 3 n.1.

[2] In his answer, Defendant did not admit to the specific amount of unpaid taxes because he "is without sufficient knowledge or information to admit or deny whether the exact tax balances stated in the complaint are correct." Dkt. No. 14 ¶ 10.

While Defendant's unpaid taxes accumulated, several interim events affected the IRS's ability to collect those taxes. First, Defendant filed for bankruptcy on July 25, 2008. Dkt. No. 25-1 ¶ 17; In re Timothy M. Ragen, Case No. 4:08-bk-41325 (Bankr. S.D. Ga.). The bankruptcy proceeding concluded without a discharge on December 15, 2011. Dkt. No. 25-1 ¶ 17; Bankr. Case, Dkt. No. 146.

Next, Defendant filed two offers in compromise with the IRS. Dkt. No. 25-1 ¶ 18. An offer in compromise is "a contract between a taxpayer and the IRS in which the IRS agrees to accept a payment different from what the taxpayer owes." Begner v. United States, 428 F.3d 998, 1004 (11th Cir. 2005). Defendant filed the first offer in compromise on November 19, 2012, and the IRS rejected the offer on December 10, 2012. Dkt. No. 25-1 ¶ 18. Defendant filed the second offer in compromise on February 13, 2013, and the IRS rejected it on April 19, 2014. Id.

Lastly, Defendant filed an installment agreement request with the IRS. Id. ¶ 19. As the name implies, an installment agreement "allows the taxpayer to make scheduled periodic payments of any tax liability," but the IRS is not obligated to enter into such agreements if it determines that it will not facilitate tax collection. 26 C.F.R. § 301.6159-1(a). Defendant proposed the

agreement on August 31, 2021, and the IRS rejected it on March 11, 2022.[3] Dkt. No. 25-1 19.

### III. The Present Suit

The United States filed this suit to reduce Defendant's tax liability to judgment on October 13, 2023. See generally Dkt. No. 1. Defendant filed an answer on December 29, 2023. Dkt. No. 14. The United States now seeks summary judgment. Dkt. No. 25. Defendant has not responded to the motion for summary judgment, and counsel for Defendant represented to the Court that he does not intend to respond or otherwise defend against this lawsuit. Dkt. No. 32.

### LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing

---

[3] Defendant admits that he took these actions. Dkt. No. 14 ¶¶ 17–23. Defendant simply states that he "lacks information and knowledge at this time as to the events that suspended, and thus extended, the statute of limitations on collection" as discussed further below. Id. ¶ 17.

law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. Id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

When the nonmovant fails to respond to a motion for summary judgment, the Court "cannot base the entry of summary judgment on

the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. 5800 SW 7th Ave., 363 F.3d 1099, 1101-02 (11th Cir. 2004). The Court must nevertheless "review all of the evidentiary materials submitted in support of the motion for summary judgment," and "determine if there is, indeed, no genuine issue of material fact." Id. at 1101- 02, 1103 n.6.

## DISCUSSION

### I.    Statutory Scheme to Reduce Tax Assessments to Judgment

Section 6501(a) of the Internal Revenue Code provides that "the amount of any tax imposed by this title shall be assessed within [three] years after the return was filed." 26 U.S.C. § 6501. Accordingly, when a required taxpayer fails to pay, the IRS prepares a federal tax deficiency assessment to ascertain the amount due in delinquent taxes and memorialize the formal entry of that amount in IRS records. Id. §§ 6201, 6213(c). "An assessment amounts to an IRS determination that a taxpayer owes the federal government a certain amount of unpaid taxes and is entitled to a legal presumption of correctness—a presumption that can help the government prove its case against a taxpayer in court." United States v. Stein, 881 F.3d 853, 854-55 (11th Cir. 2018) (en banc) (quoting United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002)) (internal quotation marks omitted) (alterations adopted). This assessment is reflected by the Commissioner's issuance of a

8

Certificate of Assessments, Payments, and Other Specified Matters, called a Form 4340, for each tax year. 26 U.S.C. § 6203.

Within sixty days after assessment, the IRS must serve a notice and demand for payment. Id. § 6303(a). If the tax remains unpaid after notice and demand, the IRS may collect those unpaid taxes through a "proceeding in court." Id. § 6502(a)(1); see also United States v. Bode, 546 F. Supp. 3d 1317, 1321 (S.D. Fla. 2021) (reviewing statutory scheme for tax collection suits).

"In reducing an assessment to judgment, the Government must first prove that the assessment was properly made." United States v. White, 466 F.3d 1241, 1248 (11th Cir. 2006). "The Government's submission of a Form 4340 establishes such a presumption." Id. "Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." Id.

## II.  Timeliness

First, the United States' suit must be timely for the claimed tax liability to be enforceable. "If a tax is properly assessed within three years," the suit to collect taxes must be filed within ten years from the date of assessment. Galletti, 541 U.S. at 116 (citing 26 U.S.C. § 6502(a)). Certain circumstances prevent the IRS from collecting taxes and toll the ten-year period. 26. U.S.C. § 6331(i)(5) ("The period of limitations under section 6502 shall be suspended for the period during which the Secretary [of the Treasury] is prohibited under this subsection from making a

levy."). "The ultimate burden of proof on the limitations defense always rests on the taxpayer." Feldman v. Comm'r, 20 F.3d 1128, 1132 (11th Cir. 1994) (citation omitted).

### A. Bankruptcy

Title 11 bankruptcy proceedings suspend the limitations period for the length of the bankruptcy case and for six months thereafter. 26 U.S.C. § 6503(h). Defendant admits that his bankruptcy proceeding was pending from July 25, 2008, to December 15, 2011. Dkt. No. 14 ¶ 19; Bankr. Case., Dkt. No. 146. Including the six months thereafter, the Court finds that the limitations period was tolled for 1,422 days during the pendency of Defendant's bankruptcy suit. See id.

### B. Offers in Compromise

"Offers in compromise contain a waiver of the limitations period in order to enable the Government to consider the offer without the prejudice resulting from a running of the limitations period against collection of the tax." United States v. Ryals, 480 F.3d 1101, 1105 (11th Cir. 2007) (citing United States v. Ressler, 576 F.2d 650, 652 (5th Cir. 1978)). "The running of the statutory period is suspended until the offer of compromise is terminated, withdrawn, or formally rejected." Id. Thereafter, the statutory period is tolled for thirty more days if the offer in compromise is rejected. 26 U.S.C. § 6331(k)(1)(B).

Defendant admitted to filing both offers in compromise. Dkt. No. 14 ¶ 21. The first rejected offer in compromise tolled the limitations period for fifty-one days between November 19, 2012, and thirty days after December 9, 2012. Dkt. No. 25-1 ¶ 18. The second offer in compromise tolled the period for 460 days between February 13, 2013, and thirty days after April 19, 2014. Id.; dkt. no. 25 at 13.

## C. Offer for an Installment Agreement

Finally, the limitations period is suspended "during the period that a proposed installment agreement relating to that liability is pending with the IRS." 26 C.F.R. § 301.6331-4(c); see also 26 U.S.C. § 6331(k)(2)(A). The statute of limitations is also tolled for the thirty days after the Secretary rejects an offer for an installment agreement. Id. § 6331(k)(2)(B).

Defendant admitted to filing the proposed installment agreement. Dkt. No. 14 ¶ 23. It is likewise undisputed that the proposal was pending with the IRS until March 11, 2022. Dkt. No. 25-1 19. Accordingly, the limitations period was suspended for 223 days from August 31, 2021, until thirty days after the rejection on March 11, 2022. Dkt. No. 25-1 ¶ 19.

## D. Limitations Period Calculation

The Internal Revenue Code measures the statute of limitations from the day of the tax assessment. 26 U.S.C. § 6502(a). The following dates of assessment occurred over ten years prior to the

11

filing of this suit and thus must be tolled to be timely: (1) the

May 14, 2007 assessment of $5,737.00 in tax; (2) the November 19,

2007 assessment of $130,079.76 in tax, interest, penalties, and

fees; (3) the October 20, 2008 assessment of $209,042.53 in tax,

interest, penalties, and fees; (4) the November 21, 2011 assessment

of $192,876.41 in tax, interest, penalties, and fees, and; (5) the

October 15, 2012 assessment of $57,585.08 in tax, interest,

penalties, and fees.[4] Dkt. No. 25-1 ¶¶ 6, 14.

First, all the tolling events apply to the May 14, 2007,

assessment. Even tolling by the sum of 2,156 days, the suit must

have been brought by April 8, 2023. Again, this suit was filed on

October 13, 2023. Dkt. No. 1. Thus, the balance of $11,403.51 for

the 2004 tax year is untimely.

But Defendant did not raise a statute-of-limitations defense,

and the Eleventh Circuit treats the timeliness of a tax collection

suit as an affirmative defense, which can be waived. See Dkt. No.

14; Feldman, 20 F.3d at 1132 (analyzing the three-year assessment

limitation period under § 6501); United States v. Gurley, 415 F.2d

144, 147 (5th Cir. 1969) (same).[5] Accordingly, the Court does not

---

[4] The amounts assessed do not necessarily reflect the amount sought
by the United States because of Defendant's sporadic payments and
tax abatements. Dkt. Nos. 25-1 ¶¶ 6, 14; 25-3.
[5] Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)
(en banc) (adopting as binding precedent all decisions of the
former Fifth Circuit handed down prior to close of business on
September 30, 1981).

apply the time bar to the United States' recovery because
Defendant, the taxpayer, waived the defense. Gurley, 415 F.2d at
147 ("[A]s a general rule of law, the running of the statute of
limitations is an affirmative defense, to be pleaded and proved by
the taxpayer . . . . [S]ince [it] was not asserted by the
[taxpayer], whatever effect it might have has been waived."
(citation omitted)); accord Badger Materials, Inc. v. Comm'r, 40
T.C. 1061, 1063 (1963) ("[T]he statute of limitations is a defense
in bar and not a plea to the jurisdiction of this Court."); United
States v. McGee, 993 F.2d 184, 187 (9th Cir. 1993) ("[T]he running
of a statute of limitations is an affirmative defense that must be
pleaded and proved by a taxpayer." (citations omitted)); United
States v. Johnson, 920 F.3d 639, 645 (10th Cir. 2019) (holding
that the appellees waived the argument challenging the timeliness
of the Government's claim under § 6502's ten-year statute of
limitations because "[a] challenge to the timeliness of a claim is
an affirmative defense that must be raised by the party alleging
the claim is time-barred" (citations omitted)).[6]

---

[6] Other courts have indicated that a filing of a timely collection
suit is a jurisdictional, statutory prerequisite, but the Court
holds that treatment of the statute of limitations as an
affirmative defense is consistent with Eleventh Circuit precedent.
See United States v. Norwood, 49 F.4th 189, 213 (3d Cir. 2022)
("[U]nder § 6502(a), the Government would not be able to collect"
because, in part, "many, if not most, statutory deadlines do in
fact carry with them consequences that limit or strip the
Government of its ability to act once a deadline has passed."
(citing Dolan v. United States, 560 U.S. 605, 610–11 (2010)); cf.

Second, all the tolling events apply to the November 19, 2007, assessment. Tolling the ten-year limitations period by 2,156 days, the suit must have been brought by October 15, 2023. Thus, the recovery for these taxes, interest, penalties, and fees is timely.

Third, the bankruptcy proceeding was pending on the date of October 20, 2008, assessment. Thus, the statute of limitations did not begin to run until June 15, 2012—six months after the conclusion of the bankruptcy case. After this limitations period began, the offers in compromise and the proposed installment agreement tolled the period for 734 days. Accordingly, the suit to reduce these taxes for the 2007 tax year to judgment must have been brought by June 18, 2024. Thus, these taxes, interest, penalties, and fees are recoverable.

Fourth, and similarly, the November 21, 2011, assessment occurred during the bankruptcy proceeding and would be tolled by the same number of days. Thus, the limitations period for the 2010 tax year also began to run on June 15, 2012, and it was tolled for 734 days. Accordingly, the United States had until June 18, 2024,

---

Danoff v. United States, 324 F. Supp. 2d 1086, 1100 (C.D. Cal. 2004) ("[I]t is hornbook law that jurisdictional requirements, such as the time period for filing refund claims, cannot be waived, altered, or amended by an IRS employee." (citing Rosenbluth Trading, Inc. v. United States, 736 F.2d 43, 47 (2d Cir. 1984)); see also Angelus Milling Co. v. Comm'r, 325 U.S. 293, 296 (1945) ("Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials.").

to bring the suit to reduce these taxes to judgment, and the amount assessed on November 21, 2011 is recoverable.

Fifth, and finally, the offers in compromise and the proposed installment agreement toll the limitations period for the October 15, 2012, assessment. Tolling the ten-year period by 734 days, the suit for these taxes must have been brought by October 18, 2024. Therefore, the amount assessed on October 15, 2012 is recoverable.

In conclusion, under 26 U.S.C. § 6502(a), the United States is entitled to recover the assessments related to tax years 2004, 2006, 2007, 2010, 2011, 2012, and 2013 as a matter of law. Having held the assessments were timely, the Court continues to the second step of the inquiry and evaluates the amount sought by the United States.

### III. Tax Liability

Second, the United States must meet its burden to "prove that the assessment was properly made" to establish taxpayer liability. White, 466 F.3d at 1248. Because the Government submitted a Form 4340 for each recoverable tax year, there is a presumption that the IRS properly made each assessment. Id. "Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." Id. Considering the taxpayer's failure to oppose the motion for summary judgment and his admission in his answer to the tax liability, Defendant has not proved the assessment was erroneous. See Dkt. Nos. 14 ¶ 10 ("Defendant admits

that only he remains liable for these tax balances but is without

sufficient knowledge or information to admit or deny whether the

exact tax balances stated in the complaint are correct."), 32.

The Court reviewed "all of the evidentiary materials

submitted in support of the motion for summary judgment." 5800 SW

7th Ave., 363 F.3d at 1101–02. Each Form 4340 reflects that the

amount assessed was based on Defendant's tax return. Dkt. Nos. 25-

3 at 2, 14, 25, 35, 44, 51; 37-1 at 2. Each form accurately reflects

the correct numbers underlying the United States' calculation of

the assessed balances. Dkt. Nos. 25-3 at 2–3, 14–15, 18, 25, 28,

35, 38, 44–45, 51–52; 37-1 at 2–4.[7] Each form accurately reflects

proper notice given. Dkt. Nos. 25-3 at 10–11, 21–22, 31–32, 41,

48, 55; 37-1 at 6.

Further, the IDRS computation output parallels the values on

the forms and reflects the correct compounded interest amount.

Dkt. No. 25-4. Accordingly, the Government has established that it

is entitled to judgment as a matter of law. Defendant owes a

balance of $11,403.51 for tax year 2004, $230,324.06 for tax year

2006, $450,863.84 for tax year 2007, $377,333.78 for tax year 2010,

$31,653.40 for tax year 2011, $50,594.73 for tax year 2012, and

---

[7] The Court notes that, for tax year 2011, $381.55 was listed twice
in the statement of material facts: once as interest and once as
a penalty. Dkt. No. 25-1 ¶ 6. According to the Form 4340, this
amount was for interest. Dkt. No. 25-3 at 44. The Court made
certain that this amount was counted only once in the calculation.
Dkt. No. 25-4 at 13.

$146,214.83 for tax year 2013. Dkt. Nos. 25-1 ¶¶ 6, 14, 25-4 at 1,
5, 8, 11, 14, 17. The Court reduces the assessment of $1,286,984.64
as of June 17, 2024, plus the $11,403.51 as of October 13, 2023,
and any statutory additions and interest accrued as provided by 26
U.S.C. §§ 6621, 6622, to judgment.

**CONCLUSION**

For the foregoing reasons, the Government's motion for
summary judgment is **GRANTED**. Final judgment will be entered by
separate order in favor of the United States of America and against
Timothy M. Ragen for tax years 2004, 2006, 2007, 2010, 2011, 2012,
and 2013. The United States is **ORDERED** to submit a proposed order
of final judgment.

**SO ORDERED**, this 30th day of April, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA